UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN, ETC., INC., <br> Plaintiff, <br> v. <br> APPLIED UNDERWRITERS CAPTIVE RISK ASSURANCE COMPANY, INC., <br> Defendant. | Case No. 17-cv-03660-DMR <br><br> **ORDER GRANTING MOTION TO CONFIRM ARBITRATION AWARD AND DENYING MOTION TO VACATE ARBITRATION AWARD** <br><br> Re: Dkt. Nos. 19, 25 |

## I. INTRODUCTION

Petitioner American, Etc. Inc., d/b/a Royal Laundry ("Royal") and Respondent Applied Underwriters Captive Risk Assurance Company, Inc. ("AUCRA") completed arbitration involving a workers' compensation insurance program. On May 8, 2017, the arbitrator issued an arbitration award that, in part, ordered Royal to pay outstanding premiums to California Insurance Company, a non-party to the arbitration. Royal moves to vacate the arbitration award pursuant to 9 U.S.C. §§ 10(a)(3)–(4). [Docket No. 19 (Pet'r's Mot.).] AUCRA cross-moves to confirm the arbitration award. [Docket No. 25 (Resp't's Mot.).]

Having carefully considered the parties' written submissions and oral argument, and for the reasons set forth below, the court denies the motion to vacate the arbitration award, grants the motion to confirm the arbitration award, and confirms the arbitration award.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Royal is a California corporation with its principal place of business in South San Francisco, San Mateo County, California. [Docket No. 19-1 (Edwards Decl., Sept. 12, 2017) ¶ 2.] AUCRA is an Iowa corporation with its principal place of business in Omaha, Nebraska. *Id.* at ¶ 3. AUCRA holds a California Department of Insurance-issued license to sell workers'

compensation insurance in the State of California, and at all times pertinent to this case, AUCRA was authorized to do business in California as a property and casualty insurer. *Id*. AUCRA is a member of the Berkshire Hathaway Group and is a subsidiary of Applied Underwriters, Inc. ("Applied"). Applied also has several other corporate subsidiaries, including California Insurance Company ("CIC"). *Id*. at ¶ 4.

In 2013, Royal obtained a workers' compensation insurance policy from Applied for the period of time from April 1, 2013 through March 31, 2016. Edwards Decl. ¶¶ 6, 9. The policy, offered through Applied's EquityComp program, was a loss-sensitive retrospective insurance plan under which Royal understood that it could lower its premium costs by maintaining low claims losses. *Id*. at ¶ 6. Additionally, Royal expected that the program would "return . . . a profit to Royal if it maintained a sufficiently low loss ratio." *Id*. at ¶ 7.

On March 28, 2013, Royal executed a Request to Bind which contained a mandatory arbitration clause and obligated Royal to execute a Reinsurance Participation Agreement ("RPA"). *Id*. at ¶ 8, Ex. A (Request to Bind), Ex. B (unexecuted RPA). Royal contends that it had not seen the RPA when it signed the Request to Bind and did not "realiz[e]" that the RPA was "different" from the proposal in the Request to Bind. Edwards Decl. ¶¶ 8, 9. Under the RPA, Royal obtained three years of workers compensation insurance coverage through policies issued by CIC, defined in the RFP as an "issuing insurer." Edwards Decl. ¶¶ 9, 12; Ex. B.

AUCRA did not file the RPA with the California Department of Insurance for approval pursuant to the California Insurance Code, which requires all workers' compensation insurance policies to be filed and approved before being sold to a California employer. *Id*. at ¶ 11; *see* Cal. Ins. Code § 11658, Cal. Code Regs. tit. 10, § 2268. Instead, AUCRA instructed CIC to issue three consecutive one-year "filed and approved" insurance policies to Royal. Edwards Decl. ¶ 12. According to Royal, AUCRA did so "to give the appearance of compliance with the California insurance regulations." *Id*.

In October 2015, Royal received an invoice from AUCRA which requested payment of almost double of its average monthly premium. *Id*. at ¶ 15. As it was unable to pay the entire amount, Royal negotiated an agreement with AUCRA to pay the outstanding premiums in

2

installments. *Id*. On October 19, 2015, AUCRA sent Royal a Notice of Cancellation of its workers' compensation insurance effective November 8, 2015. *Id*. at ¶ 16. Two months later, AUCRA sent Royal a demand for payment of $911,396.96. *Id*. at ¶ 17. In January 2016, AUCRA increased its demand for payment to $958,108.96. *Id*. at ¶ 18. Soon after, Royal and AUCRA agreed to enter into arbitration. *Id*. at ¶ 20.

In its amended demand for arbitration, Royal asserted the following claims: (1) the RPA was illegal and unenforceable because it was a collateral agreement that altered the insurance policy and was not filed with the California Department of Insurance; (2) AUCRA committed fraud by misrepresenting the nature of the EquityComp program; (3) the RPA was sold in violation in the covenant of good faith and fair dealing; (4) the RPA was ambiguous and therefore unenforceable; and (5) the RPA, even if enforceable, contained unconscionable provisions that should be stricken from the agreement. Arbitration Award at 1. AUCRA counterclaimed, seeking $1,144,458.96 for payments allegedly owed under the RPA. *Id*.

The arbitration hearing was held from March 27, 2017 to March 28, 2017 at the Silicon Valley office of JAMS in California. Justice Edward A. Panelli (Ret.) presided. *Id*. at 12. On May 8, 2017, the arbitrator issued an arbitration award. *Id*. The arbitrator found that the RPA was void and unenforceable because it was a collateral agreement to an insurance policy that altered the terms of the insurance policy and was not filed and approved by the Department of Insurance before it was sold to Royal. *Id*. at 9-11. Such approval is mandatory before the sale of an insurance policy under California Insurance Code section 11658 and state regulations. *Id*. The arbitrator granted Royal's request for declaratory relief and concluded that Royal was entitled to rescission of the RPA. *Id*. at 11. In light of his conclusion that the RPA was void and unenforceable, the arbitrator did not address Royal's claims for breach of the implied covenant of good faith and fair dealing, fraud and misrepresentation, unconscionability, and unjust enrichment. *Id*. As to the remedy, the arbitrator denied Royal's request that AUCRA forfeit its expected profit from the sale of the EquityComp program and be ordered to return money to Royal. *Id*. Noting that "rescission is an equitable remedy to which equitable relief will apply," the arbitrator ordered Royal to pay CIC $539,246.88 in remaining premium payments for the workers' compensation

3

coverage that CIC provided and that Royal received from 2013 through 2016. *Id*. at 11-12 (citation omitted). He also denied AUCRA's counterclaim. *Id*. at 12.

On June 27, 2017 Royal filed a petition to vacate the arbitration award. [Docket No. 1.] On August 18, 2017 AUCRA filed an answer and cross-petition to confirm the arbitration award. [Docket No. 13.] The clerk issued a notice on August 30, 2017, directing Royal to file its petition as a duly-noticed motion in accordance with the local rules. [Docket No. 17.] In response, on September 18, 2017, Royal filed its present motion on September 18, 2017. Pet'r's Mot. AUCRA filed a cross-motion to confirm the arbitration award, in which it incorporated by reference its cross-petition to confirm and other filings. Resp't's Mot. It also requests an award of attorneys' fees and costs under 28 U.S.C. § 1927. The court heard the matter on November 9, 2017.

## III. LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), once a controversy has been arbitrated and the arbitrator has made an award, either party to the arbitration may move to vacate the arbitration award. *See* 9 U.S.C. § 10. Section 10 of the FAA sets forth the exclusive grounds for vacating an arbitration award:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a)(1)–(4); *see also Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 578 (2008) (holding that "the statutory grounds are exclusive."). Section 10 creates "an extremely limited review authority" that is "designed to preserve due process but not to permit unnecessary public intrusion into private arbitration procedures." *Kyocera Corp. v. Prudential–Bache Trade Servs., Inc.*, 341 F.3d 987, 998 (9th Cir. 2003). That limited judicial review "maintain[s] arbitration's essential virtue of resolving disputes straightaway." *Hall St. Assocs.*, 552 U.S. at 588. "Neither erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an

4

arbitral award under the statute, which is unambiguous in this regard." *Kyocera*, 341 F.3d at 994. "The burden of establishing grounds for vacating an arbitration award is on the party seeking it." *U.S. Life Ins. Co. v. Superior Nat'l Ins. Co.*, 591 F.3d 1167, 1173 (9th Cir. 2010).

Absent a showing of grounds to vacate or modify an arbitration award under Sections 10(a)(3) or 10(a)(4), the court must confirm the award "even in the face of erroneous findings of fact or misinterpretations of law." *Kyocera*, 341 F.3d at 997. Confirmation is mandatory unless the award is vacated, modified, or corrected as prescribed in Sections 10 and 11 of the FAA. 9 U.S.C. § 9.

## IV. ANALYSIS

The parties' cross motions raise two issues: 1) whether the arbitrator exceeded his power by ordering Royal to pay outstanding premiums to CIC, which was not a party to the arbitration; and (2) whether the arbitrator engaged in misbehavior prejudicing Royal's rights by failing to give Royal notice that it would consider CIC's claims against Royal.

### A. The Arbitrator Did Not Exceed His Power by Ordering Royal to Pay Outstanding Premiums to CIC

Royal first argues that the arbitrator exceeded his power by ordering Royal to pay outstanding premiums to CIC, a third party who was not present or otherwise directly involved in Royal and AUCRA's arbitration. An arbitrator exceeds his or her power under Section 10(a)(4) when the award "is completely irrational, or exhibits a manifest disregard of law." *Biller v. Toyota Motor Corp.*, 668 F.3d 655, 665 (9th Cir. 2012) (quoting *Kyocera*, 341 F.3d at 997). Royal argues that the arbitration award suffers from both defects.

#### 1. The Arbitration Award is Not Completely Irrational

Royal argues that the arbitration award was "irrational and illogical" because CIC was not a party to the arbitration in dispute.[1] Pet'r's Mot. 11. "An award is completely irrational 'only

---

[1] Royal argues in passing that the arbitrator lacked jurisdiction to order relief in CIC's favor because CIC is not a judgment creditor within the meaning of California Code of Civil Procedure section 680.240. Pet'r's Mot. at 11. The basis for this argument is not clear, as Royal does not explain how any purported mistake by the arbitrator regarding CIC's status as a judgment creditor satisfies the "completely irrational" or "manifest disregard" of the law standards. To the extent that the arbitrator erred on this point, it is of no import, because "[n]either erroneous legal conclusions nor unsubstantiated factual findings" provide a basis to overturn an arbitrator's

5

where the arbitration decision fails to draw its essence from the agreement.'" *Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 641 (9th Cir. 2010) (quoting *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1288 (9th Cir. 2009)). "An arbitration award draws its essence from the agreement if the award is derived from the agreement, viewed in the light of the agreement's language and context, as well as other indications of the parties' intentions." *Lagstein*, 607 F.3d at 642 (9th Cir. 2010) (citations omitted). "Only if the arbitrator act[s] outside the scope of his contractually delegated authority—issuing an award that simply reflect[s] [his] own notions of [economic] justice rather than draw[ing] its essence from the contract—may a court overturn his determination." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013) (quotation omitted).

Here, the RPA provides authority for the arbitrator's decision to order Royal to pay money to CIC. Specifically, paragraph 9 of the RPA permits AUCRA to "recoup any balances" that Royal owed in connection with its workers' compensation insurance on behalf of AUCRA *as well as its affiliates*, as follows:

> In the event the Participant [Royal] is in default of any obligations to the Company [AUCRA] under this Agreement or under any other agreement with any affiliate of the Company (Affiliated Agreements), the Company may take all reasonable steps to protect its and its affiliates' interests. The parties hereto shall have the right to the fullest extent provided by law to offset or recoup any balances due from one to the other under this Agreement or any Affiliated Agreements.

[Docket No. 23 (Barzelay Decl., Sept. 28, 2017), Ex. 2 (Executed RPA) 2.] This provision expressly authorizes AUCRA to seek amounts due from Royal to its affiliate, CIC. Therefore, the award was "derived from the agreement" based on its express language. *See Lagstein*, 607 F.3d at 642.

Royal does not address the applicable standard or paragraph 9 of the RPA, nor does it otherwise explain how the award "fails to draw its essence from the agreement." Instead, Royal appears to argue that the arbitration award is irrational because the parties did not agree to arbitrate

---

decision. *Bosack v. Soward*, 586 F.3d 1096, 1104 (9th Cir. 2009) (quoting *Kyocera*, 341 F.3d at 994).

6

CIC's claims against Royal. This argument is not persuasive, because the arbitrator examined the relationship between AUCRA, CIC, and Applied, and concluded that the three entities were all "part of one system." Arbitration Award 10. Noting that "AUCRA and CIC are just affiliated-subsidiaries of Applied that give the appearance of separate companies working together," he went on to state that "[t]he RPA and the CIC Policies therefore are not separate contracts between separate entities," and that "all of the agreements associated with the EquityComp program are the product of one company—Applied." *Id*. Based on these findings about the relationship between the entities, the arbitrator determined that "the best form of equitable relief" was to order Royal to pay to CIC the cost of the outstanding premiums and costs associated with the workers' compensation coverage provided by CIC. *See id*. at 11-12.

Royal's argument "amounts to an invitation to review the [arbitrator's] factual findings and legal conclusions," which the court is prohibited from doing. *See Bosack v. Soward*, 586 F.3d 1096, 1104 (9th Cir. 2009). Whether the arbitrator's findings about the relationship between AUCRA, CIC, and Applied or his decision to order equitable relief in the form of Royal's payment to CIC were erroneous is not for the court to decide, as "[n]either erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award under the [FAA] statute, which is unambiguous in this regard." *See id*. (quoting *Kyocera*, 341 F.3d at 994).

### 2. The Arbitrator Did Not Manifestly Disregard the Law

Royal next asserts that the arbitrator manifestly disregarded the law by ordering it to pay outstanding insurance premiums to CIC. To establish that an arbitrator manifestly disregarded the law, the party seeking to vacate an arbitration award must show "more than just an error in the law or a failure on the part of the arbitrators to understand or apply the law." *Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 879 (9th Cir. 2007). "It must be clear from the record that the arbitrator[] recognized the applicable law and then ignored it." *Id*. Further, in order to rise to the level of "manifest disregard," the "governing law alleged to have been ignored by the arbitrator[] must be well defined, explicit, and clearly applicable." *Id*. at 879-880 (quotation omitted) (emphasis removed).

7

Royal asserts that the law is well established in California that "a judgment may not be entered for or against one who is not a party to an action or proceeding." Pet'r's Mot. at 11 (citing cases). It cites numerous cases purporting to reflect this principle, while conceding that "some" cases have "appropriate" facts and "some . . . do not." *Id*. However, the arbitrator's award was not a judgment, and Royal cites no authority applying this principle to arbitration proceedings. An arbitrator does not manifestly disregard the law where "no well-defined, explicit, and clearly applicable law exist[s] to be disregarded." *Collins*, 505 F.3d at 879-80.[2]

The Ninth Circuit's decision in *Comedy Club* is instructive on the issue of "manifest disregard of the law." There, the petitioners, Comedy Club, Inc. and Al Copeland Investments, Inc. (together, "CCI") executed a trademark agreement with respondent, Improv West Associates ("Improv West") that granted CCI "an exclusive nationwide license to use [Improv West's trademarks]" to open new comedy clubs. 553 F.3d at 1280-81. CCI subsequently breached the parties' agreement by failing to open the minimum number of clubs and the parties arbitrated their dispute. *Id*. at 1281-82. The arbitrator entered an arbitration award that, in relevant part, enjoined CCI and its "Affiliates" from opening or operating any other comedy clubs other than those open or under construction as of a certain date for the duration of the trademark agreement. The agreement broadly defined "Affiliates" to include family members, former spouses of CCI executives, and relatives of former spouses who were not actually involved in CCI's business and operations. *Id*. at 1282-83, 1286. The Ninth Circuit vacated that portion of the award, finding that the arbitrator exceeded his authority by issuing permanent injunctions that "attempt[ed] to bind persons beyond the scope of the arbitrator's authority." *Id*. at 1286. The court examined the scope of Federal Rule of Civil Procedure 65(d), which governs injunctions, as well as California law regarding covenants not to compete, and concluded that because "collateral relatives are not in privity with the Trademark Agreement signatories, or with CCI shareholders, partners or persons . . . [u]nder California law, the arbitrator lacked the authority to enjoin these non-parties from owning or operating comedy-related businesses or restaurants." *Id*. at 1287. In other words, the

---

[2] Additionally, whether CIC is a "third party" is unclear; the arbitrator found that CIC, AUCRA, and Applied are not separate entities but are "all part of one system." Arbitration Award 10.

8

arbitrator ignored the relevant law.

In *Comedy Club*, the Ninth Circuit vacated the portion of the arbitration award that violated clearly established state law regarding covenants not to compete. Here, in contrast, Royal does not cite any clear and established law that prohibits arbitrators from issuing awards that benefit third parties. *See also Golden Temple of Oregon, LLC v. Puri*, No. 3:11-CV-01358-HZ, 2017 WL 2432147, at *3 (D. Or. Jun. 2, 2017) (appeal filed, Jun. 29, 2017) (rejecting argument that *Comedy Club* stands for the proposition "that arbitrators exceed their authority when they award relief to non-parties to the arbitration," and holding that "*Comedy Club* does not state that arbitrators exceed their authority by issuing awards which require a party in the arbitration to give something to a non-party . . . . [t]he law in this jurisdiction does not state that arbitrators exceed their authority when they grant an award that benefits a third party."). Moreover, even if there were an applicable law prohibiting arbitration awards to third parties, Royal does not show that the arbitrator "recognized" and "ignored" that law. *See Collins*, 505 F.3d at 879.

In its reply, Royal cites *Unimart v. Superior Court*, 1 Cal. App. 3d 1039 (1969), claiming that the case "says an arbitrator cannot issue an award in favor of a non-party." [Docket No. 24 (Pet'r's Reply) 1-2.] Not so. In that case, Unimart, a retail department store business, entered into a collective bargaining agreement ("CBA") with a union that covered its stores within the union's geographical jurisdiction. 1 Cal. App. 3d at 1041. The parties agreed that the CBA would apply to any additional stores opened by Unimart within that jurisdiction. *Id*. The union filed a petition to compel arbitration with Unimart, alleging that Unimart opened a new store within the union's geographical jurisdiction using the name of its sister corporation, "Two Guys," and refused to apply the CBA to the store. *Id*. Unimart denied opening a new store and denied any ownership or interest in the Two Guys corporation. *Id*. at 1042. The court granted the motion to compel arbitration and ordered Unimart to arbitrate the dispute. *Id*. The appellate court granted Unimart's petition to prevent the arbitration from going forward, holding that "an arbitrator has no power to determine the rights and obligations of one who is not a party to the arbitration agreement or arbitration proceedings. Whether or not the arbitration provisions are operative against a party who has not signed the arbitration agreement (Two Guys) depends upon the status of such party

9

and its relation to the party-employer who signed the agreement (Unimart)." *Id*. at 1045. The court concluded that the question about the relationship between Unimart and Two Guys "must be decided by the court in an appropriate proceeding on the basis of a factual determination," not by the arbitrator. *Id*. at 1047.

Under *Unimart*, a party that has not signed an arbitration agreement cannot be forced into arbitration proceedings in the absence of a court's factual findings that it is bound by the agreement. *Unimart* does not stand for the proposition that an arbitrator may not order an arbitrating party to pay money to a non-arbitrating party.

### B. The Arbitrator Did Not Engage in Prejudicial Misconduct or Misbehavior

In its initial motion, Royal makes a passing reference to section 10(a)(3), and later posits a vague argument loosely tied to the statute. Pet'r's Mot. 1, 12-15. Royal asserted that the arbitrator "went beyond the issues litigated" by considering CIC's claims for relief even though neither AUCRA nor CIC had pursued them in arbitration. *See id*. at 14-15. Royal appeared to contend that the arbitrator engaged in prejudicial misconduct by considering CIC's claims, because Royal never had a chance to defend itself against those claims.[3] For the first time on reply, Royal fleshes out its section 10(a)(3) argument by asserting that AUCRA never gave Royal notice that it needed to defend against a claim by CIC for premiums due under the policies. *See* Pet'r's Reply 2-3.

The court need not address legal issues raised for the first time in a reply brief. *United States v. Rozet*, 183 F.R.D. 662, 667 (N.D. Cal. 1998). However, even if Royal's argument had been clearly presented in its opening brief, Royal fails to satisfy the standard for vacatur under section 10(a)(3). A court may vacate an arbitration award "where the arbitrator[] [was] guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy," or "of any other misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a)(3). "In determining whether an arbitrator's misbehavior or misconduct prejudiced the rights of the

---

[3] Here, the court speculates about the nature of the section 10(a)(3) argument that Royal makes in its opening brief, because Royal conflated it with its section 10(a)(4) argument that the arbitrator "exceeded his powers." Pet'r's Mot. 14-15.

10

parties, [courts] ask whether the parties received a fundamentally fair hearing." *Move, Inc. v. Citigroup Glob. Markets, Inc.*, 840 F.3d 1152, 1158 (9th Cir. 2016). "A hearing is fundamentally fair if it meets the minimal requirements of fairness—adequate notice, a hearing on the evidence, and an impartial decision by the arbitrator." *Sunshine Min. Co. v. United Steelworkers of Am., AFL-CIO, CLC*, 823 F.2d 1289, 1295 (9th Cir. 1987) (quotation omitted).

Royal has not demonstrated that it was denied a fundamentally fair hearing. Royal does not contend that it was unable to present evidence on all of its claims. To the contrary, the arbitrator listed the six witnesses that testified, stated that "[a]ll exhibits that were offered were admitted into evidence," and noted that the parties had submitted pre- and post-arbitration briefs. Arbitration Award 1-2. Moreover, the arbitrator's award is detailed in explaining the reasoning and bases for his decision, which he was not required to do. *See A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401, 1403 (9th Cir. 1992) ("arbitrators are not required to state the reasons for their decisions"). Under these circumstances, there is no evidence to support Royal's claim that the arbitrator engaged in prejudicial misbehavior or misconduct, or that Royal failed to receive a fundamentally fair hearing.

Royal argues that it was prejudiced because it did not have notice of CIC's claims against Royal for unpaid premiums. While admitting that the CIC policies were introduced into evidence, Royal argues that they were not introduced "for the purpose of proving that payments were due under the Policies, but to show exactly the opposite," namely, that the RPA "altered the payment requirements under the policies" and were therefore unlawful and unenforceable. Pet'r's Reply 3. Royal then identifies the remedy it sought, "a return of its excess payments to AUCRA that were needed to cover the costs of claims that had arisen during the program period," and complains that instead of granting this remedy, the arbitrator "chose a solution not even considered by the parties to the arbitration," both "exceeding his powers" and "making an order even inconsistent with the terms of the agreement at issue." *Id*. at 3-4. However, Royal does not identify any other evidence it would have attempted to introduce, or other arguments it would have made, had it known that the arbitrator contemplated ordering Royal to pay CIC for the outstanding premiums. In essence, Royal takes issue with the arbitrator's factual findings and legal conclusions, and not the fairness

11

of the proceeding. This amounts to an improper "invitation to review the [arbitrator's] factual findings and legal conclusions." *See Bosack*, 586 F.3d at 1104.

In sum, Royal has failed to meet its burden to show that vacatur under sections 10(a)(3) or 10(a)(4) is appropriate. Its motion to vacate the arbitration award is denied. Accordingly, AUCRA's motion to confirm the award is granted. *See Kyocera*, 341 F.3d at 997 ("if a party seeks a judicial order confirming an arbitration award, 'the court must grant such order unless the award is vacated, modified, or corrected'").

### C. AUCRA's Request for Attorneys' Fees and Costs

Finally, AUCRA moves for attorney's fees pursuant to 28 U.S.C. § 1927. Under this statute, "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Sanctions imposed under section 1927 "must be supported by a finding of subjective bad faith." *In Re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996) (quotation omitted). Such "[b]ad faith is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *Id.*

Such circumstances are not present here. While counsel's arguments regarding the propriety of the arbitration award were ultimately unsuccessful, the court cannot say that they were made in bad faith. His arguments were supported by California case law, albeit authority that the court found either inapplicable or distinguishable. Accordingly, the court declines to sanction Royal's counsel for filing the motion to vacate the arbitration award.

## V. CONCLUSION

For the foregoing reasons, Royal's motion to vacate the arbitration award is denied, AUCRA's motion to confirm the award is granted, and the award is confirmed.

**IT IS SO ORDERED.**

Dated: December 28, 2017

_____
Donna M. Ryu
United States Magistrate Judge

12